### STEARNS v. TINKER & RASOR.
No. 12032.

United States District Court
S. D. California, Central Division.
July 2, 1952.

238

H. Calvin White and William P. Green, Los Angeles, Cal., for plaintiffs.

John H. Saunders, Los Angeles, Cal., Edward B. Gregg, San Francisco, Cal. (Browning & Simms, Ralph R. Browning and James B. Simms, Houston, Tex., of counsel), for defendants.

WESTOVER, District Judge.

This case concerns a holiday detector. Holiday detectors are used in the installation of underground pipe. All pipe, regardless of its composition, is subject to ravages of time and the elements and must be replaced. Consequently, from the very beginning of the industry there have been sought ways and means to extend the life span of underground pipe. Within the past several decades steel has been used more and more for underground pipe lines, but steel is also subject to corrosion and decay. To retard corrosion pipe was coated with a tar-like substance, applied by hand with a brush. However, hand coating was not perfect.

Holes in pipe coating are called "holidays" in the pipe industry, and a holiday detector is an apparatus which detects or discovers the holes or defects in pipe coatings. When the coating consisted of a tar-like substance applied by hand, it was difficult to obtain a uniform surface, and any apparatus used to detect defects often became contaminated with the coating substance. Under such conditions detecting holidays was a very precarious and unsatisfactory procedure. Methods were constantly being sought by the industry to improve (1) the means by which pipe was coated or covered and (2) detection of holidays.

One great advancement in the protection of pipe was to wrap it with paper after coating, and machines were designed whereby the pipe was coated with a rust-retarding substance and then immediately wrapped with strong paper. The paper served to accentuate the holiday problem, as it covered the holidays so that they were no longer visible to the naked eye. Search went on apace to discover methods to ascertain holidays beneath the paper wrapping.

Early in the industry it was discovered holidays could best be detected by an electric spark, and one of the first holiday detectors was nothing more than a muslin bandage dipped in a salt solution and connected with a battery. This rag was passed beneath the pipe by the operator (the ends being held in both hands) and moved along the pipe, as shown in plaintiff's Exhibit 28 in this case. In a very inefficient manner this apparatus did disclose the holidays but obviously was not a satisfactory solution to the problem; and investigation was continued by the industry as a whole to develop some apparatus which would bring about a reasonable solution to the problem.

From the muslin rag it was only a step to an electrode which was connected to a battery or coil and used by hand, being passed along the pipe by the operator. Originally the electrical apparatus was carried by the operator [plaintiff's Exhibit 10] or placed on the ground.

It was necessary to take only one additional step to transfer the electric apparatus to a cart which was pulled along the pipe [plaintiff's Exhibit 51]. Someone then decided that instead of having the cart pulled along the pipe, it would be feasible to provide a small cart, or platform with wheels attached to it, and use the pipe as the roadway [defendant's Exhibit Q]. Holiday detectors at the present time uniformly use this procedure—the electric apparatus is placed upon a small platform to which are attached wheels, and the platform is pushed or pulled along the pipe itself in search of holidays.

Transfer of the electrical apparatus from the operator's shoulders to the pipe developed in an orderly fashion, and so far as we have been able to ascertain no one has contended that it was invention to transfer the apparatus from the shoulders

of the operator to a truck or from the truck to the pipe itself.

In the case at bar plaintiff admits the platform upon which the electrical apparatus is installed is old in the art and claims no invention therefor.

At the same time the electrical part of the holiday detector was being transferred from the operator's shoulders to the pipe, improvements were constantly being made with reference to the electrode. The so-called rag or cloth detector plaintiff's Exhibit 28, was a very inefficient apparatus. However, it did establish the fact that holidays could be detected by an electric spark.

The next step in developing the electrode was the half-circle, to which wire brushes or minute wires were attached. This, too, was a manually operated electrode, being passed up and down the pipe by the operator while in use. It was only one step from the half-circle to the full-circle electrode. Plaintiff's Exhibits 30 and 30B depict the full-circle, brush electrode.

It was found the brush or wire electrode was not entirely satisfactory, inasmuch as the wires or brushes had a tendency to wear out, and it was impossible to keep the electrode while in use equidistant from the pipe at all times. In the trial and error method of attempting to find a more satisfactory electrode, the use of a steel band was tried and, finally, a coil spring.

Defendant's Exhibit DD discloses one of the first spring electrodes in use. It will be noted the spring electrode was attached to a circular band of steel by chains and rings. This electrode did not prove entirely satisfactory, as it had to be dragged along the pipe, and there was a tendency to pull the electrode away from the pipe. Although the spring electrode could turn or rotate, because of its connection to the circular band and the pull of the operator its rotation was impeded. Since it had been demonstrated the pipe could be used as a roadway for the platform, someone conceived the idea of placing the spring electrode around the pipe itself, and, when pushed by the operator, it could be made to rotate or revolve.

Plaintiff Stearns combines both of these developments to make his holiday detector, for which he claims an exclusive right. In plaintiff's detector there is a rigid arm, extending from the platform, which contacts the electrode and when the platform is pushed either forward or backward, this rigid arm in contact with the electrode causes the spring electrode to revolve. Plaintiff's Exhibit 15 is a picture of plaintiff's electrode and detector. Plaintiff does not claim he has a patent on the spring electrode. In fact, he admits that all of the elements of his electrode are old in the art but contends that he has taken certain elements old in the art and has combined them so as to achieve a new result. Although plaintiff claims he was the first to determine that a spring electrode would roll along a pipe, nevertheless, prior patents indicate he was not the first inventor.

In 1910 the United States Patent Office granted letters patent to George E. Stevens for an electric snap switch. In that patent it was disclosed there was a circular spring which was caused to rotate along a cylindrical body and, when in place, the spring itself was the connection between the negative and positive wires of the switch. It is true that in the Stevens Patent the coil springs were not used in the same manner as employed by plaintiff, but it was indicated that the coil spring could be made to rotate or roll along a cylinder and used as an electrical connection.

It is claimed that although all elements of the Stearns detector are old in the art, there is a new combination which produced a new or beneficial result. The result to be attained is the detection of holidays, and from the very beginning of the art the apparatuses have been doing just that. It may be that the Stearns apparatus is a more efficient detector—that it accomplishes better results—but it can hardly be said that it accomplishes new results.

As pointed out by Mr. Justice Douglas in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147 at page 154, 71 S.Ct. 127, at page 131, 95 L.Ed. 162, the Framers of the Constitution did not want monoplies freely granted. Every patent is the grant of a

240

privilege of exacting tolls from the public, and the invention to justify a patent

"had to serve the ends of science—to push back the frontiers of chemistry, physics, and the like; to make a distinctive contribution to scientific knowledge."

Or, as said in Gomez v. Granat Bros., 9 Cir., 177 F.2d 266 at page 268:

The invention "must reveal the flash of creative genius not merely the skill of the calling."

Mr. Justice Jackson, writing the opinion in Great A. & P. Tea Co. v. Supermarket Corp., supra, points out that:

"* * * The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

*   *   *   *   *   *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

Plaintiff in the case at bar points to his commercial success and contends that because his detector has filled a long-felt want it is patentable, but again the Supreme Court in the Great A. & P. Tea Co. v. Supermarket Corp. case, supra, says:

"The Court of Appeals and the respondent both lean heavily on evidence that this device filled a long-felt want and has enjoyed commercial success. But commercial success without invention will not make patentability."

It is admitted by plaintiff herein that every element claimed was known to prior art; and although plaintiff's device may be a great improvement over the former prior art, we feel, nevertheless, that it is improvement and not invention.

Under the authority of Great A. & P. Tea Co. v. Supermarket Corp., supra, which was decided in December, 1950, and is one of the latest pronouncements of the Supreme Court on this very difficult subject, we shall have to find that plaintiff's detector does not reach the dignity of invention.

Judgment will be rendered in favor of defendant herein, and defendant shall prepare Findings of Fact, Conclusions of Law, and Judgment to be presented to the Court on or before the 21st day of July, 1952.