ELECTRIC PIPE LINE, Inc.,
Appellant,

v.

FLUID SYSTEMS, Incorporated,
Appellee.

No. 198, Docket 23786.

United States Court of Appeals
Second Circuit.

Argued Jan. 19, 1956.

Decided March 26, 1956.

T. Clay Lindsey, John Prutzman, Hartford, Conn. (James E. Nolan, Washington, D. C., of counsel), for appellant.

Rockwell & Bartholow, New Haven, Conn. (Edmond M. Bartholow, New Haven, Conn., of counsel), for appellee.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Plaintiff and defendant are competitors in the business of furnishing plans, drawings, parts and instructions for the installation of heating systems for schools, industrial plants, churches, public buildings and the like. As defendant claimed that plaintiff was a direct and contributory infringer of its Lines Patent No. 2,224,403, issued to Harold A.

Lines of West Haven, Connecticut, on December 10, 1940, and had warned plaintiff and its customers that legal action would be instituted if unauthorized use was made of the patented system, plaintiff took the initiative and brought this suit for a judgment declaring the patent invalid and not infringed. Defendant's counterclaim was sustained in all respects. The Lines Patent was adjudged valid, an injunction issued against further use by plaintiff of its system, which was held to be a mere copy of defendant's patented system, with a few minor differences, and plaintiff's contention that defendant had misused its patent in violation of the anti-trust laws was rejected. From this judgment plaintiff appeals.

As the heating systems of schools and similar large buildings are commonly out of operation for considerable periods, and as they use heavy grades of fuel oil, such as No. 5 or No. 6, sometimes described as Bunker C, it is essential, as a matter of economy and convenience, that oil of such viscosity be heated before it reaches the burners. Prior to the Lines invention, the conventional method was the use of immersion or spot heaters, served by steam or hot water, and coils inside the supply tank. The "Lines Thermal Electric System" solved the problem of eliminating these unsatisfactory conditions by heating the oil as it passes through electrically charged pipes, between the supply tank and the burner; and heating the entire quantity of oil in the tank is avoided by a novel and ingenious arrangement by which the excess of oil delivered to the burner is returned to the tank by a "return pipe" so placed in conjunction with the "supply pipe" that "the heated oil is again drawn into the suction (supply) pipe with new oil without being diffused through the cold oil in the tank."

The claims in issue are 4, 14 and 15. The first is a process or method claim and the others "disclose a unitary system or combination to achieve a specific result."

■ The whole matter of validity and infringement is so thoroughly discussed in Judge Anderson's excellent opinion that we see no occasion for further comment. Moreover, the patent was adjudged valid by the Court of Appeals of the Sixth Circuit in Great Lakes Equipment Co. v. Fluid Systems, Inc., 6 Cir., 217 F.2d 613, where the principal patents here relied upon as constituting anticipation were thoroughly considered. Such others as were placed in evidence at the trial now under review, and on the motion for a new trial, add nothing of importance.

■ Plaintiff at first tried to palm off on the public a system identical with the "Lines Thermal Electric System," and then, after protest and warning from defendant, made the changes which Judge Anderson held to be minor. We cannot disturb his finding that the significant features of plaintiff's system "are substantially the equivalents of the defendant's patented system; it fulfills the same function and cannot be differentiated in principle." Moreover, while plaintiff only sold component parts and instruction drawings, perhaps with a certain amount of inspection and testing, its companion company M. & T. Engineering Co. actually installed the system. Accordingly, plaintiff was both a direct and a contributory infringer.

■ We turn to the anti-trust feature of the case. Plaintiff's claim is that defendant misused the Lines combination patent by "attempting to bring unpatented components within the protection of said Letters Patent and to control competition in the unpatented components contrary to public policy and in violation of the anti-trust laws." These components include electrical transformers, thermostats, tank heaters, fuel oil heaters, panel boxes, insulated couplings and insulated flanges. While these component parts are unpatented and in a sense old and well-known, those sold by defendant are especially modified or designed for use with the "Lines Thermal Electric System." Judge Anderson found that defendant had no intention of preventing the sale of these items for use outside of its patented oil transpor-

tation system. We see no reason to disturb this finding.

Plaintiff's complaint, on this phase of the case, is that defendant will not sell these component parts, which are designed and manufactured according to defendant's specifications, except in connection with defendant's "Lines Thermal Electric System." The question thus arises whether it is a misuse of the monopoly conferred by the Lines combination patent for defendant to insist that its oil transportation system only be used where the unpatented component parts are procured from it.

In Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, the Supreme Court held that it was a misuse of a combination patent covering a domestic heating system for Minneapolis-Honeywell Co., the exclusive licensee, to grant rights under the patent only when unpatented stoker switches manufactured by Minneapolis-Honeywell were purchased for use in the heating system. Minneapolis-Honeywell did not install or manufacture the heating system covered by the patent. In addition, the royalties paid under the exclusive licensing agreement were based on the number of stoker switches sold for use in the system. The method of exploiting the Lines patent employed by defendant is different from the practice proscribed by the Mercoid decision. Although Fluid does not install or manufacture its oil transportation system, it does much more than just sell "unpatented components". Fluid designs the oil transportation system to meet the individualized needs of the customer; where necessary it designs and modifies the components of the system according to its own specifications; instructions are furnished for installation; the final installation is inspected by Fluid; and a performance guarantee that the system will work is given.

In this case, the sale of unpatented components is incidental to the sale of the system as a whole, even though Fluid's revenue is derived from the sale of the components. Where the owner of a combination patent designs the installation and guarantees its performance, it is not an unreasonable use of the patent to insist that the components of the patented system be obtained from it. See Great Lakes Equipment Co. v. Fluid Systems, Inc., supra, 217 F.2d at p. 619.

Defendant contends that even if its method of doing business be condemned by Mercoid, it is protected by 35 U.S.C. § 271(d), which was enacted after the Mercoid decision.

"(d) No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: (1) derived revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) sought to enforce his patent rights against infringement or contributory infringement."

The argument runs as follows: had another attempted to design or sell components for use in the system covered by the Lines patent, it would have been guilty of contributory infringement (as we have already held with respect to plaintiff); therefore, defendant's conduct of its business in the very same manner does not constitute misuse of its patent monopoly. Although this argument has some merit, we need not here determine its validity, since we have decided that defendant's method of doing business is not proscribed by Mercoid.

Affirmed.