**ELECTRIC PIPE LINE, Inc.,**
**Plaintiff-Appellant,**

v.

**FLUID SYSTEMS, Incorporated,**
**Defendant-Appellee.**

**No. 29, Docket 24536.**

United States Court of Appeals
Second Circuit.

Argued Nov. 12, 1957.

Decided Dec. 30, 1957.

James E. Nolan, Washington, D. C. (T. Clay Lindsey and John Prutzman, of Lindsey & Prutzman, Hartford, Conn., on the brief), for plaintiff-appellant.

Edmond M. Bartholow, of Rockwell & Bartholow, New Haven, Conn., for defendant-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

CLARK, Chief Judge.

Plaintiff, Electric Pipe Line, Inc., originally instituted this action for a declaratory judgment that its system for reducing the viscosity of heavy fuel oils did not infringe defendant's patented system designed for the same purpose. Plaintiff also maintained that defendant's patent, Lines No. 2,224,403, was invalid. Defendant counterclaimed for infringement, asking for damages and injunctive relief. The district court upheld the validity of the patent, determined that plaintiff's system was infringing, enjoined plaintiff from further use of its system, and referred the issue of damages to a Special Master for hearing and report. Electric Pipe Line v. Fluid Systems, D.C.Conn., 132 F.Supp. 123, affirmed 2 Cir., 231 F.2d 370. During the pendency of the damages proceeding, plaintiff devised five modifications of its infringing system which it claims do not infringe defendant's patent. This issue was also referred to the Special Master, who fixed damages for the original infringement and held that the five modified systems also infringed defendant's patent. The district court adopted the Special Master's report in substance, and plaintiff appeals from the resulting judgment awarding defendant $22,538.43, together with injunctive relief, interest, and costs.

The Lines patent solved the problem of economically preheating heavy fuel oils used in the heating systems of large buildings. This is necessary, because the high viscosity of the cold oil prevents it from flowing from the supply tank to the burner. Under defendant's patent, cold oil is heated in electrically charged intake pipes and excess heated oil from the burner mixes with cold oil from the tank and is returned to the burner. This is accomplished without diffusing the excess heated oil throughout the entire supply tank through the use of concentric intake and return pipes. The inner heated pipe, through which oil is drawn from the tank to the burner, is surrounded by a larger outer pipe which carries excess oil back from the burner to the tank. Complete diffusion is prevented because the intake pipe is shorter than the return pipe and the latter is located near the floor of the tank.

Electric Pipe's original infringing system separated the intake and return pipes in the tank, locating them both under a "hood" or "bell" to prevent diffusion. In four of its five modified systems the hood has been removed and the two pipes located at varying distances from one another. This has caused more of the excess heated oil to diffuse throughout the tank, rendering the system less efficient than defendant's. Still, as the Special Master found on substantial evidence, varying quantities of the excess heated oil mix with unheated oil and are returned to the burner in an electrically heated pipe. Thus plaintiff still incorporates the method and system invented by Lines with only minor modifications. As Judge Anderson said in his well reasoned opinion below, D.C.Conn., 146 F.Supp. 262, 264, 265: "The value in the defendant's patented system rests upon the fact that the viscosity of the fuel being taken up in the suction [intake] pipe and conducted to the burner is reduced and made flowable without the necessity of reducing the viscosity of all or a substantial quantity of the oil in the tank. The plaintiff in these four systems makes full use of the method and system disclosed by the defendant's patent but by changing the arrangement of return and suction pipes renders the method and system somewhat less efficient * * *. The plaintiff * * * renews its argument that the defendant's patent permits of no diffusion whatever and concludes that now it, the plaintiff, has provided

additional diffusion around the area of the tank unit, it has thoroughly distinguished its new offerings from the patented system. But they obviously could not function at all without making full use of the substance of the defendant's patented invention." The plaintiff's modifications are insubstantial, and these four systems infringe defendant's patent.

The plaintiff's fifth modified design incorporates the principles of defendant's system except that it provides for a mixing of the excess heated oil returned from the burner and the cold oil from the tank in a T joint located above the supply tank. This system avoids the return of any heated oil to the tank and therefore prevents any diffusion. But again plaintiff combines the two unique elements devised by Lines: heating oil in an electrically charged intake pipe and mixing excess heated oil with cold oil without complete diffusion in the tank. As the court says, D.C.Conn., 146 F.Supp. 262, 265: "This change in position and form does not prevent the system therein described from being 'substantially the same device, performing the same offices with no change in principle.'"

■ Plaintiff raises a number of objections to the computation of damages due Fluid Systems on the original infringement. The Special Master considered thirty-seven sales and installations of the infringing system by Electric Pipe. Fluid Systems had bid on twenty-two of these installations. It was prevented from bidding on some of the remaining jobs by carefully drawn specifications inspired by Electric Pipe. The lower court adopted in substance the Master's computation of damages which awarded Fluid Systems lost profits on all thirty-seven jobs. This sum included contemplated profits on lost sales of unpatented component parts of the system, such as immersion heaters and other accessories.

Plaintiff maintains that an award of lost profits was erroneous, because there was no showing that Fluid Systems would have done the installations on either the bid or unbid jobs had Electric Pipe been out of the picture. But the Master found, on substantial evidence, that these parties were the only suppliers of this unique patented fuel storage and transportation system called for by the specifications in all thirty-seven installations and which the customers in question desired to use and did install. Furthermore, the systems uniformly were only a minor part of the construction cost of each of the buildings in which they were installed. These findings justify the conclusion that but for Electric Pipe's infringement, Fluid Systems would have made all these installations. Therefore, loss of profit on all the jobs was the correct standard of damages. Continuous Glass Press Co. v. Schmertz Wire Glass Co., 3 Cir., 219 F. 199, certiorari denied 238 U.S. 623, 35 S.Ct. 661, 59 L.Ed. 1494; Oil Well Improvements Co. v. Acme Foundry & Machine Co., 8 Cir., 31 F.2d 898; Bemis Car Box Co. v. J. G. Brill Co., 3 Cir., 200 F. 749, 765, certiorari denied 226 U.S. 614, 33 S.Ct. 326, 57 L.Ed. 382.

■ The Master found that Fluid Systems would have incurred no increase in general overhead expenses had it undertaken the thirty-seven installations for which it was allowed recovery of lost profits. Over the period in question defendant's general overhead increased coincidentally with gross sales. Plaintiff maintains that this experience proves that defendant would have incurred increased overhead expenses had it taken on the installations in question. The Master found, however, that substantially all of the increase in overhead was occasioned by increases in salaries and the establishment of offices in New York and Chicago. Therefore, although the general overhead and gross sales figures increased coincidentally, the increases were not related and the Master's conclusion appears justified.

■ The business of the parties is to furnish plans and parts for fuel transportation systems. A substantial portion of their profits results from the sale of the parts. These parts include trans-

**700**

formers, thermostats, tank assemblies, insulated flanges, control panels, and electric immersion heaters. Many of these items have separate uses outside the systems and can be purchased separately for other purposes. In the original infringement action plaintiff maintained that defendant violated the antitrust laws by requiring that its customers purchase all these items from it. We rejected this contention, finding that "the sale of unpatented components is incidental to the sale of the system as a whole, even though Fluid's revenue is derived from the sale of the components." Electric Pipe Line v. Fluid Systems, 2 Cir., 231 F.2d 370, 372. We went on to say that "[w]here the owner of a combination patent designs the installation and guarantees its performance, it is not an unreasonable use of the patent to insist that the components of the patented system be obtained from it." Ibid. Now plaintiff renews its argument under a new guise. It contends that defendant must apportion profits resulting from the sale of the system to exclude revenues derived from the unpatented component parts. To do otherwise, says plaintiff, is tantamount to saying that Fluid Systems was entitled to use the patent to compel its customers to buy their accessories from it. But this is precisely what we held Fluid Systems could do and not violate the antitrust laws. Therefore, the inclusion of profits from the sale of all the components seems proper, because Fluid Systems' revenues would have reflected these sales had it not been for Electric Pipe's infringement.

Further, the patent here involved gave value to the components which otherwise would have been useless for the purposes involved and would not have been sold by Electric Pipe or anyone else. As Judge Anderson said, D.C.Conn., 146 F.Supp. 262, 263, 264: "The facts and circumstances of this case come under the rule that where the entire marketable value of the thing sold is dependent on the patent, its entire value is included in computing infringement damages." The Goulds Mfg. Co. v. Cowing, 105 U.S. 253,

26 L.Ed. 987; Hurlbut v. Schillinger, 130 U.S. 456, 9 S.Ct. 584, 32 L.Ed. 1011; Wales v. Waterbury Mfg. Co., 2 Cir., 101 F. 126, certiorari denied 177 U.S. 693, 20 S.Ct. 1028, 44 L.Ed. 945; Westinghouse v. New York Air Brake Co., 2 Cir., 140 F. 545, certiorari denied 201 U.S. 648, 26 S.Ct. 762, 50 L.Ed. 904. Defendant was under no duty to apportion profits, and the component parts properly were included in the computation of lost profits.

Judgment affirmed.