COLEMAN COMPANY, Inc., a corporation, Appellant,

v.

HOLLY MANUFACTURING COMPANY, a corporation, Appellee.

No. 16141.

United States Court of Appeals
Ninth Circuit.

Aug. 25, 1959.

Parker, Stanbury, Reese & McGee, Raymond G. Stanbury, Los Angeles, Cal., Timothy L. Tilton, Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., John F. Eberhardt, Foulston, Siefkin, Schoeppel, Bartlett & Powers, Wichita, Kan., of counsel, for Coleman Co., Inc.

Christie, Parker & Hale, James B. Christie, C. Russell Hale, Pasadena, Cal., Richard B. Hoegh, Los Angeles, Cal., of counsel, for Holly Mfg. Co.

Before CHAMBERS and JERTBERG, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

After a patent has been adjudged valid and infringed, as has been done in the case before us, the question of damages for that infringement is necessarily one of detail.

In such an appeal, there presses upon the reviewing court, with more than the usual insistence, the immemorial canon that, given substantial evidence to support its judgment, the trial court must have its way.

Such is the situation that confronts us here.

1. Statement of the Case.

This appeal concerns the accounting for damages, which accounting was conducted by the District Court after the mandate was issued by the Court of Appeals on the previous appeal, which dealt with the issues of validity and infringement. The appellant Coleman also asks this Court of Appeals to review the judgment of contempt. The previous appeal is reported at 9 Cir., 233 F.2d 71, certiorari denied, 352 U.S. 952, 77 S.Ct. 326, 1 L.Ed.2d 243. In the earlier case, the Court of Appeals decided that the patent involved in the instant case, No. 2,602,-441, was valid and infringed, and that fact cannot be relitigated now, though the appellant in his brief seeks to do so. This case deals strictly with the accounting and the judgment of contempt.

The patent in suit is fully described and discussed in our decision in the earlier appeal, supra, and we need not review that discussion here.

The District Court handed down the following judgment:

The appellant, hereinafter sometimes referred to as Coleman, willfully and deliberately infringed the plaintiff's patent.

Coleman was guilty of civil contempt for its failure to comply with the terms of the injunction issued by the District Court.

Holly is entitled to judgment as follows:

(a) For lost profits, $1,450,661.78;

(b) Increase of 33⅓% of lost profits to provide full compensation for the injury caused to the plaintiff by the defendant's infringement, $483,553.93;

(c) Increase of 25% of lost profits to provide for exemplary damages, $362,-665.45;

(d) Treble damages for defendant's sales after the injunction became final, December 28, 1956, $69,483.38;

(e) Reasonable attorneys' fees, $130,000;

(f) Additional attorneys' fees and expenses, resulting from Coleman's noncompliance with the injunction, $9,269.-77;

(g) Costs, $3,008.42;

(h) Injunction against Coleman, prohibiting manufacture, use, or sales of wall heaters of the patented combination or like certain of the defendant Coleman's models.

### 2. The Appellant's Argument.

The original evidence before this appellate court was mistaken and incorrect.

Holly's damage cannot be equated with Coleman's sales.

Coleman acted in good faith, and the Special Master so found.

The Court's award of $1,450,661.78 as the plaintiff's lost profit is factually and legally erroneous because:

1. The realities of the wall heater market situation make it impossible to conclude that Holly would have made all of Coleman's sales.

2. The law requires that any claimed actual damages for patent infringement be proved with certainty, and there is no presumption of damage beyond that of a reasonable royalty.

3. The 19% profit margin attributed to Holly is without support in the record.

4. The 33⅓% increase of the assumed lost-profits damages is arbitrary, unreasonable, and without evidentiary support.

As Coleman's good faith is completely vindicated, there is no legal basis for the award of punitive damages and attorneys' fees, because—

1. The Court's finding of bad faith is directly contrary to the Special Master's report, although based upon the same evidence.

2. The infringing air actually was of no value to the Coleman heater.

3. Coleman's engineers believed in good faith that they were not using the Holly combination.

4. Coleman's conclusion that it did not infringe was based upon its knowledge of the actual nature of the heater, and not upon the mistaken testimony introduced by Holly and accepted by the Court.

5. Coleman was advised by its patent attorney that there was no infringement.

6. The fact that Coleman developed and patented its own heater design creates a presumption of good faith.

7. Coleman did not fail to "exercise due care."

8. The original adjudication of infringement does not establish bad faith.

The adjudication that Coleman's modified heater infringed is contrary to the evidence and was improper on a motion for contempt.

The facts of this case permit only the "reasonable royalty" approach to the damage issue, and the record enables this Court of Appeals to fix a reasonable royalty.

### 3. The Appellee's Argument.

Coleman is rearguing the entire case, despite the decisions of the lower court. It is also arguing points not covered in its Points on Appeal or in its Specification of Errors.

The willful infringement, the advance in the art provided by the plaintiff's invention, and Coleman's appropriation thereof in its entirety, preclude assessment of damages on the basis of a reasonable royalty, on the basis of the advantage provided by the infringing device "over a standard of comparison," or on the basis of apportionment of the profits.

The proper measure of damages is the reasonably probable profit that Holly

would have made on the infringing sales, since that profit is larger than the profit that Coleman made on the infringing sales. Coleman's profit was less than the profit that it is reasonably probable Holly would have made on the infringing sales and hence is not the proper measure of damages. As a minimum, therefore, Holly would be entitled to recover Coleman's actual profit, $1,186,537, irrespective of whether Holly would have made the sales that Coleman made if Coleman had not entered the field. An infringer's profits are a traditional measure of damages.

An award based upon profits, either Holly's lost profits or Coleman's actual profits, does not fully compensate Holly. In addition, Holly suffered price reductions on its own sales that were forced by Coleman's competition, increased selling expenses, and curtailment of its market expansion based upon the use of the patented wall heater as a leading product. The increase in the award in the amount of 33⅓ per cent to compensate Holly for these injuries is proper.

Whether the sales of the wall heaters after the injunction became final were in contempt is purely a question of fact. The sole issue is whether the wall heaters sold with chutes infringed Holly's patent. Great weight is given to a trial court's determination of fact, particularly when it is based upon an inspection of physical apparatus and inter partes tests of apparatus.

The punitive increase in damages and the award of attorneys' fees are well supported by the evidence. Coleman was a willful tort-feasor. It deliberately pirated Holly's major product and infringed Holly's patent. Its patent counsel was not informed sufficiently concerning the wall heaters to render an opinion upon which Coleman could rely in good faith, and the appellant made many misrepresentations to Holly concerning the infringement.

Coleman is arguing questions of fact only, and on such questions, the lower court's judgment should prevail.

## 4. The District Court's Findings in the Contempt Proceeding.

On February 18, 1955, the District Court entered an interlocutory judgment in favor of the appellee, enjoining the appellant from infringing the first four claims of the patent in suit.

On March 16, 1955, on motion of the appellant, the Court below issued an order staying enforcement of the judgment pending determination of the appeal, supra.

On December 28, 1956, the judgment of the District Court was affirmed, supra, and accordingly the stay order was of no further force or effect.

On or about December 28, 1956, a writ of injunction was issued by the Clerk of the Court and served upon the appellant. By the terms of the writ, the appellant was enjoined from:

(a) Making, using, selling, etc., the patented combination;

(b) Making, using, selling, etc., any wall heaters of certain specified models of the appellant's heaters, etc.

After the writ of injunction was served upon the appellant, it continued to sell in Los Angeles County, California, and elsewhere, wall heaters that were identical with those previously found by the Court to infringe the appellee's patent, except for the addition of the "chute", supra. The chute has been included in the cartons containing the appellant's wall heaters of certain models, which heaters have been sold since on or about July 15, 1956.

The District Court found that prior to the addition of the chute, the wall heaters of the appellant were so constructed that the "economizer" was adapted to receive air flowing upward outside the lower box and inside the wall, as taught by the patent in suit. When such wall heaters were installed and placed in operation, a substantial quantity of air entered the economizer from around the back and sides of the lower box. The quantity of air entering the economizer from around the back and sides of the appellant's lower box previously found to infringe was of

sufficient quantity to affect materially the efficiency and operation of the wall heaters.

The Court further found that the installation of a chute to the appellant's heaters previously found to infringe eliminates approximately two-thirds of the air that entered the economizer from around the back and sides of the lower box. The quantity of air entering the economizer from around the back and sides of the lower box as thus restricted by the addition of the chute still materially affects the efficiency and operation of the appellant's models in suit. Those models, the lower court correctly found, are of substantially the same construction as the models in suit, previously found to infringe the appellee's patent, No. 2,602,441.

Accordingly the lower court found that the appellant's sale of its wall heaters in question since the writ of injunction was served on it, is an infringement of the appellee's patent, and that such sale violates the terms of the injunction, constituting a contempt of the lower court. The appellee therefore is entitled, the District Court held, "to a compensatory fine in civil contempt, measured by the damages, including attorneys' fees and expenses, * * * sustained by the (appellee) by reason of the (appellant's) non-compliance with the injunction issued by this court and served on the (appellant) on December 28, 1956."

5. Despite the Prior Holding of This Court, the Appellant Persists in Re-arguing the Question of Validity and Infringement.

Despite its threshold avowal that "No review of the original finding of validity or infringement is sought or expected", the appellant repeatedly and earnestly re-argues those precise two points.

For example, it captions an entire sub-section of its opening brief, "Revelation That Original Evidence Before This Court Was Mistaken and Incorrect."

Again, the appellant argues that "Coleman's Conclusion That It Did Not Infringe Was Based Upon Its Knowledge of the Actual Nature of the Heater, and Not Upon the Mistaken Testimony Introduced by Holly and Accepted by the Court."

Once more, the appellant refers to "Holly's erroneous evidence * * * later received and believed during the original trial."

Elsewhere in the appellant's brief, we are told that "It has been adjudicated, upon the mistaken evidence heretofore referred to, that Coleman intentionally infringed the Holly patent."

We have spelled out the appellant's contentions in this respect at such length because we are convinced that the appellant, despite its initial lip-service to the weight to be given to this Court's previous holding that the patent in suit is valid and has been infringed, is still unregenerate and unconvinced. On the adjudicated issues of validity and infringement, the appellant's corporate head is bloody but unbowed.

The point that we are here making is not a technical one. It relates to a salutary principle, firmly imbedded in the law. Again and again we are told that "There must be an end to litigation," and yet attorneys still seek to relitigate adjudicated issues.

■ For a century and a half, our Supreme Court has hammered home the principle that, on a second appeal, the higher court is confined to a consideration of the proceedings that took place in the trial court after the mandate in the first case was handed down. Matters that were adjudicated on the first appeal are no longer open to re-examination.

In Himely v. Rose, 1809, 5 Cranch 313, 9 U.S. 313, 314, 3 L.Ed. 111, the appeal was from so much of the final judgment of the lower court, rendered upon the mandate of the Supreme Court issued on the reversal of the former judgment of that court, as affirmed a report of auditors appointed by the court. In such a situation, Chief Justice Marshall observed:

"Nothing is before this Court but what is subsequent to the mandate."

And at the other end of the time-span, we find the following statement by our present Chief Justice, in Lawlor v. National Screen Service, 1955, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122:

"Thus, under the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action."

Nevertheless, in all fairness, it should be noted that occasionally in its brief, but especially in its oral argument before this Court, the appellant has freely conceded that the question of validity and infringement has been completely foreclosed by our opinion in the first appeal, supra. The appellant now contends that its references to the first case have been made for the purpose of showing that its conclusion, that it did not infringe, was based upon its knowledge of the actual nature of the heater and not upon what the appellant regards as the "mistaken testimony" introduced by the appellee and accepted by the trial court.

Such a showing, the appellant argues, is relevant to the question of punitive damages, as indicating that the appellant has acted in good faith throughout this controversy, and that therefore the lower court erred in mulcting it in punitive damages. We accept counsel's avowal on this point, and will consider the appellant's references to the first case solely on the question of the appellant's good faith, both in connection with the original alleged infringement and in connection with the portion of the lower court's judgment holding the appellant in civil contempt.

6. There is Substantial Evidence to Support the Judgment of the District Court in All Respects.

■ Issues relating to the amount of damages for infringement of a patent relating to punitive damages for contempt for not adequately obeying the District Court's injunction are questions of fact. We say "adequately", because, as we have seen, the appellant persists in selling the identical infringing wall heaters, save for the addition of an ineffectual small piece of metal—the chute.

■ On conflicting evidence, the Court below found the appellant guilty of civil contempt for failure to comply with the injunction. The appellant would have us, in effect, re-assess the evidence and find that the District Court weighed it wrongly. This, under hornbook rules, we cannot do. Where, as here, there is substantial conflict in the evidence, a court of appeals cannot substitute its judgment for that of the trial court.

In the instant case, the introduction of a "gadget"—to borrow Mr. Justice Douglas's happy term [1]—did not save the appellant's wall heater from infringement.

Nor is the appellant's position improved on the question of punitive damages. When this controversy was before us the first time we said:

"We find no merit in appellant's claim of non-infringement in the manufacture and sale of its devices. The lower court did not err in finding that all of appellant's wall heater models No. 64, 67, 68 and 69 (the identical models that we are considering in this second case) infringe each of the claims 1, 2, 3, and 4 of Letters Patent No. 2,602,441 in suit (and still is suit in this present second case); *that such infringement has been and is intentional, conscious and deliberate*, and that the infringement will continue unless enjoined by the court." (Emphasis supplied.) 9 Cir., 233 F.2d at page 84.

At this point ingenious counsel for the appellant has indulged in the familiar "yes-but" argument that this Court has so frequently exposed. Yes, but, argues counsel, "I take it that since the issue of good faith has not been brought and (sic) submit here now that 'intentional' (supra) means that with knowledge of

<hr>

1. Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corporation, ■ 1950, 340 U.S. 147, 156, 71 S.Ct. 127, 95 L.Ed. 162 (concurring opinion).

the facts but with a belief that the facts didn't show infringement, we intentionally infringed."

Quite aside from the "double-talk" flavor of this statement, it is completely answered by the following excerpt from our opinion in the first case:

> "*A careful consideration of the entire record (including exhibits)* convinces us that all of the essential parts and elements of appellee's device have been, with immaterial variances, *faithfully copied* by appellant in constructing its various models here claimed to infringe appellee's patent. There is most persuasive evidence in the record to sustain this conclusion. Aside from all of the other evidence adduced the record reveals *that it was not until after Holly's new wall heater with its 'secondary heat exchanger' was on the market and enjoying commercial success that Coleman (appellant here) undertook the design of the claimed infringing devices. At that time the Holly heater was the only one on the market employing such an exchanger.'* Furthermore, the many *admissions* by appellant in response to requests for admissions serve to reveal (save in what we regard as immaterial variances in construction claimed to affect the passage of air from the bottom of the competing devices) that the Coleman devices contain all of the elements called for by claims 1 through 4 of the patent in suit. We think these slight variations *do not serve to show that the accused Coleman devices do not function as taught by the Holly invention.*" (Emphasis supplied.) 233 F.2d at pages 83–84.

We are of the firm opinion that the foregoing language demonstrates that in the earlier case, this Court clearly and emphatically held that the appellant "intentionally infringed"—but not "with a belief that the facts didn't show infringement." On the contrary, this Court has held that the appellant has "faithfully copied" the appellee's device. Such a faithful copying reveals an intentional disregard of the appellee's patent rights, and therefore justified the District Court's crucial Finding in the present case as follows:

> "Defendant's infringement was wilful and deliberate and in complete disregard of plaintiff's patent rights, and although it had notice of plaintiff's patent, defendant did not exercise due care to ascertain whether or not it was infringing plaintiff's patent prior to commencing the sale of the infringing devices, or at any other time; and plaintiff's damages as actually computed on the basis of plaintiff's lost profits or on the basis of defendant's actual profits *should be increased at least 25% to provide exemplary damages.*" (Emphasis supplied.)

■ Our holding in the first case, even if it be not buttressed by the record in the litigation that we are now considering, compels us to the conclusion that it is res judicata that the appellant's established infringement was willful, intentional, and deliberate. We have the adjudicated fact that the appellant, only after Holly's new wall heater with its "secondary heat exchanger" was on the market and enjoyed commercial success, "faithfully copied" the appellee's device.

■ In such a situation, the award of punitive damages is justified.

In Bristol Laboratories v. Schenley Laboratories, D.C.Ind.1953, 117 F.Supp. 67, 81, the Court said:

> " * * * in the event it is hereafter found by the Court that defendant's infringement has been intentional, willful and deliberate, plaintiff shall be entitled to treble the amount of its damages * * *."

7. **The Appellant's Patent Attorney Admitted That He Was Not "Very Familiar" With the Appellant's Models in Suit.**

Horace Dawson, the appellant's patent attorney, admitted that he was not "very

familiar" with the appellant's wall heater production models in suit, that he only "thought" that the statements which he made about them were true, and that he did not see any tests of the heaters prior to the commencement of this suit, which was filed on September 23, 1953.

Dawson's precise testimony on this subject given before the Special Master, was as follows:

"Q. (By Mr. Hoegh): Are you familiar with the production models of the Coleman Company (appellant) in these particular model numbers, Mr. Dawson? A. I don't believe that I am very familiar with those.

"Q. Did you ever investigate whether or not the statements you have made there were actually true as to the Coleman Company devices? A. Well, I thought they were true, that this was an accurate statement as to the structure.

"Q. Did you observe any tests prior to the time that you made those statements in that letter? A. I observed some tests that were made prior to taking some depositions in Wichita, and I don't remember what that date was. That probably would be a later date. * * * I believe that was in January of 1954. * * * I don't believe that I observed tests prior to writing this, tests made on the structure."

8. The District Court Itself Observed Tests of the Wall Heaters.

The appellant complains that "although the Special Master expressly found that Coleman had acted in good faith and should not be subjected to punitive damages for patent infringement, the Trial Court found upon the same evidence that Coleman (appellant) was guilty of bad faith." Elsewhere in its brief, however, the appellant itself states that the trial court received "visual evidence" at the trial.

In commenting upon this "visual evidence," the District Judge evinced keen insight into the practical problems in this case. On that subject we quote the trial court's remarks in full:

"The test here, as suggested this morning, seems to me to be whether enough air enters the Economizer from the pink or infringing area to affect materially the efficiency of the heater. Without the chute it is adjudicated that it does. The best estimate I can make, doing some calculations, as I did during the course of the argument, is that if around 20 per cent of all the air in the Economizer is comprised of brown, green, and pink air, that of approximately 6 per cent would be brown, the remainder would be green and pink, and using the best estimates we have and placing them in round figures, the evidence indicates that the chute cuts off two-thirds, say two-thirds, of the air to the Economizer from the pink area. I must find that the elimination of two-thirds of the air from the pink area still leaves the area materially affecting the efficiency of the heater, and that therefore it constitutes an infringement. In so finding I don't need to reach the question of whether or not the chute should have been made stationary in the heater or what effect that might have.

"The court finds accordingly that the (appellant) is guilty of a civil contempt of the decree."

9. Conclusion.

The court below found that the quantity of air entering the economizer from around the back and sides of the lower box, as restricted by the addition of the chute, still materially affects the efficiency and operation of the appellant's models in suit.

Despite the prior holding of this Court, the appellant persists in rearguing the question of validity and infringement.

■ There is substantial evidence to support the judgment of the Court below on the subject of damages for the already adjudicated infringement.

The Court below had reason not to be impressed by the testimony of the appellant's patent attorney, who admitted that he was not "very familiar" with the infringing models.

The District Court heard all the testimony, and observed tests of the wall heaters. We have only the exhibits and the cold record before us. The evidence was voluminous and conflicting, and a substantial part of it supported the judgment of the Court below, which judgment, according to an immemorial canon of appellate law, must be affirmed.