[redacted]

**AMERICAN SAFETY TABLE COMPANY (a Pennsylvania corporation), as successor to American Safety Table Co., Inc., Plaintiff-Appellee,**

**v.**

**Joseph SCHREIBER and David Goldberg, individually and trading as Schreiber & Goldberg, Defendants-Appellants.**

**Nos. 515–517, Dockets 32946–32948.**

United States Court of Appeals
Second Circuit.

Argued June 24, 1969.

Decided Aug. 27, 1969.

[redacted]

Otterbourg, Steindler, Houston & Rosen, Kane, Dalsimer, Kane, Sullivan & Smith, New York City, Leon Edelson, Philadelphia, Pa., for appellee.

Charles Sonnenreich, New York City, for appellants.

Before HAYS and FEINBERG, Circuit Judges, and JAMESON, District Judge.[*]

JAMESON, District Judge:

Both parties have appealed from an order and final judgment awarding appellee damages for patent infringement and unfair competition. Defendants-Appellants appeal from the award of damages and attorney fees and the fixing of the compensation of a special master.[1] Plaintiff-Appellee appeals on the ground that the awards of damages for unfair competition, attorneys' fees, and increased damages under 35 U.S.C. § 284 were inadequate.

This action for patent infringement and unfair competition was commenced in 1952. At the trial the unfair competition claim was dismissed by the district court and judgment was awarded the plaintiff for patent infringement. On appeal this court reversed the dismissal of the claim for unfair competition, affirmed the adjudication of patent validity, and directed an accounting, the issuance of an injunction, and the allowance of attorney fees to plaintiff. American Safety Table Company v. Schreiber, 2 Cir. 1959, 269 F.2d 255, 276–277, rehearing denied 269 F.2d 282, cert. denied 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185, 1959.[2]

On February 24, 1960, the district court entered an interlocutory judgment declaring appellants liable for damages, for patent infringement and unfair competition, awarding appellee reasonable attorney fees, and appointing a special master to determine the amount of the damages and fees. The interlocutory judgment also formulated the terms of the injunction required to implement the directive contained in this court's mandate. Defendants appealed from the injunctive provisions of the interlocutory judgment. The judgment was modified by the elimination of one paragraph[3] and otherwise affirmed. American Safety Table Company v. Schreiber, 2 Cir. 1961, 287 F.2d 417, reh. denied, 287 F.2d 420.

Appellants applied again to the district court to modify the interlocutory judgment. The application was denied, and a second interlocutory judgment was entered April 26, 1961, containing all of the provisions of the February 24, 1960, judgment except for the elimination of paragraph 8(g). On appeal, this court in a *per curiam* opinion declined to modify further the terms of the injunction and affirmed. American Safety Table Company v. Schreiber, 2 Cir. 1961, 292 F.2d 501.

Pursuant to the interlocutory judgment the action was referred to a special master for an accounting and the fixing of attorney fees. The special master rendered his report on June 30, 1966. Both parties excepted to his findings.

---

[*] Senior District Judge of the District of Montana, sitting by designation.

1. Appellants contend that the award of damages was too high, there was insufficient evidence to support an award of attorney fees, the amount allowed the special master was excessive, and costs should have been apportioned between the parties.

2. A judgment in a second action holding another patent valid and infringed was reversed. Judge Clark, dissenting, would have held both patents invalid and affirmed the dismissal of the claim for unfair competition.

3. The court directed the elimination as unnecessary of paragraph 8(g), which enjoined defendants "(g) from making or selling or offering for sale double point collar forming and pressing machines wherein the table top is rectangularly shaped and/or is sloped to an angle of 37 degrees plus or minus 20 degrees; 7."

In addition, appellee moved to punish appellants for contempt for refusing to comply with certain injunctive provisions. On January 30, 1968, the district court overruled all objections, adopted the findings of fact and conclusions of law of the special master as its own, and directed the entry of final judgment for the plaintiff.

In an order entered June 17, 1968, the district court allowed an application of the special master for a fee of $15,000 plus disbursements of $84.28, provided that the fee should be paid by the plaintiff and that plaintiff should be reimbursed therefor by the defendants, and denied plaintiff's motion for an order adjudging defendants in contempt. The final judgment was entered July 25, 1968.

The respective appeals raise five basic questions:

(1) Did the district court err in (a) awarding appellee lost profits which it should have realized from the sale by appellants of unpatented tables and frames sold independent of die assemblies, and (b) in awarding lost profits by reason of appellants' sales of complete machines and refusing to apportion the profits from the sale of the patented die assembly?

(2) Did the court properly allow increased damages for deliberate and willful patent infringement, and if so, was the amount adequate?

(3) Did the court err in (a) allowing the special master $15,000 for his services, and (b) in assessing the total costs of the accounting proceeding and the special master's fee against the appellants?

(4) Did the court err in allowing appellee $10,000 as attorney fees, and if not, was the amount adequate?

(5) With respect to the claim for unfair competition, did the court err (a) in awarding appellee damages for the pre-patent infringement period; and (b) in denying awards for the patent infringement and post-infringement period?

## I. Damages for Patent Infringement

In our opinion holding appellee's patent valid and infringed by appellants, we directed an accounting to ascertain the "damages sustained and profits lost * * by reason of the fraudulent practices," described in our opinion, "up to the time of discontinuance of such practices * * *" (269 F.2d at 277). The special master awarded appellee damages in the sum of $48,666.87 for patent infringement for the period June 24, 1952 (notice of infringement having been given on June 23) to August 17, 1954, the day that the valid patent expired. This award was affirmed by the district court.

Appellee produces a collar pressing machine which is used by shirt manufacturers. "The two claims in suit covered a part of the machine known as the die assembly. It consists of an upper and lower die, a yoke (pressure applying means) pivotally mounted on a shaft, and a spring which stresses the upper die towards the lower die." (Report of Special Master, Appendix to Appellant's Brief, p. 13a) The die assembly rests on a table or frame, which is unattached, and the die assembly may be removed from the table and replaced by another die made for a different collar design. The complete machine is used for pressing a quarter-collar and is referred to as $\frac{1}{4}$ collar pressing machine and die assembly. Another machine presses half-collars and is known as the $\frac{1}{2}$ collar pressing machine.

Appellants manufactured two machines, the A-type "which simulated (appellee's) machine in close detail," and the B-type which was "a sufficient enough departure from its Type-A machine * * * to warrant the issuance" of a patent (16a).

The tables or frames were not covered by appellee's patent. Some of the tables manufactured by defendants were sold separate from the die assemblies, although all sales were made to manufacturers who had previously purchased appellants' machines or die assemblies.

The award for damages made by the special master, and affirmed by the district court, represented appellee's lost profits on sales by appellants of both A-type and B-type machines, one-half and one-quarter collar die assemblies, and tables or frames sold without dies. Appellants contend that (a) their A-type tables sold independently of their die assemblies should have been excluded, (b) the apportionment rule should have been applied to their complete machines, (c) lost profits on the sale of one-half collar die assemblies and machines should have been limited to profits on the one-quarter die assembly, and (d) damages on sales of B-type machines should have been apportioned and limited to profits from the sale of one-quarter die assemblies.

■ Appellants sold tables as parts of complete A-type machines, as parts of complete B-type machines, and independently of die assemblies. The master and district court found that the unpatented table was "useless" and "unmarketable" without the patented die assembly. On this basis the entire market rule was applied in awarding damages for the sales of all tables.

In affirming the district court's application of the entire market rule in Electric Pipe Line, Inc. v. Fluid Systems, Inc., 2 Cir. 1957, 250 F.2d 697, 700, this court said: "Further the patent here involved gave value to the components which otherwise would have been useless for the purposes involved and would not have been sold by Electric Pipe or anyone else. As Judge Anderson said [Electric Pipe Line, Inc. v. Fluid Systems] D.C. Conn., 146 F.Supp. 262, 263, 264: 'The facts and circumstances of this case come under the rule that where the entire marketable value of the thing sold is dependent on the patent, its entire value is included in computing infringement damages' (citing cases)".[4]

The factual situation supporting its conclusion that the entire market rule is applicable in this case was well summarized by the district court as follows:

"The situation, * * * is not one where defendants sold only tables. In certain cases, at a minimum, it clearly appears that defendants sold the unattached tables precisely to those who had previously purchased their machines or die assemblies. PX-23. Now, considering that defendants are plaintiff's sole competitor,[5] that die assemblies are easily removable from the tables, that manufacturers maintain $4\frac{1}{2}$ assemblies to each table and that manufacturers, therefore, have occasion to purchase tables independently of assemblies, it becomes apparent that defendants' infringing sales of machines and assemblies created the market for the sale of tables separate from assemblies. This situation is thus analogous to that where tables are sold as parts of complete machines. Defendants are accountable for these independent sales." (Opinion, Appendix to Appellant's Brief, p. 53a)

We agree and hold that the entire market rule was properly applied.

■ Appellants question the allowance of lost profits for appellants' sale of B-type machines. While it is true that appellee itself did not make or sell the B-type machine, the special master and district court specifically found that appellants sold their B-type machines in

---

4. In addition to cases there cited, see Crosby Steam Gage and Valve Co. v. Consolidated Safety Valve Co., 1891, 141 U.S. 441, 12 S.Ct. 49, 35 L.Ed. 809, holding that where the entire value, as a marketable article, of a machine is properly and legally attributable to the patented invention of plaintiff, the plaintiff is entitled, in an action for infringement, to recover the entire profit of the manufacture and sale of the machine by defendants.

5. The master found that appellee and appellants, "despite defendant's citation of a used machine dealer, are, beyond peradventure, the only manufacturers of the machinery in suit" (19a).

infringement of appellee's patent.[6] On this point the district court said in part:

"* * * this position (of appellants) disregards the facts that B-type machines were infringing because they performed a function identical to that performed by plaintiff's machines through the use of plaintiff's invention and that defendants were plaintiff's sole competitor. It follows that but for defendants' sale of B-type machines, purchasers would have bought from plaintiff in order to supply their need for collar shaping and pressing machines" (54a).

■ Nor do we find merit in appellants' contention that infringement damages should be limited to the sales of their ¼ collar machines and die assemblies and should not be assessed against the sales of their ½ collar forming machines and die assemblies. It is true that the ½ collar die assembly, as later developed by appellee, included features held to be unpatentable, but these features were in addition to the novel double pivot feature arrangement characterized by this court as an "ingenious contrivance" (269 F.2d at 263),[7] and which was used in the ½ collar die assembly as well as the ¼ collar die assembly.

We hold that the damages for patent infringement were properly computed by the special master and district court.

## II. *Increased Damages*

■ In a proper case damages for patent infringement may be increased "up to three times the amount found or assessed."[8] The special master recommended an increase of 25%, and his recommendation was adopted by the district court. Both parties have appealed from this portion of the judgment, appellants contending that no increase was warranted, and appellee contending that the base damages should have been trebled.

■ The special master properly recognized that, "Awards of increased damages are made sparingly and only when a clear showing of deliberate infringement justifies the exercise of the Court's discretion" (38a). Where, however, a patent infringement is willful, intentional, and deliberate an award is proper.[9] This rule has been applied where a patented device was "faithfully copied," such a faithful copying revealing "an intentional disregard of * * * patent rights." Coleman Co., Inc., v. Holly Manufacturing Company, 9 Cir. 1959, 269 F.2d 660, 666.

Both the special master and district court found that appellants "faithfully

---

6. The special master, in referring to the testimony of appellee's expert, said: "He testified through specific example that defendants' Type-B machine contained each element of plaintiff's patent claims and that the Type-B machine performed the same work in substantially the same manner and therefore in his opinion, constituted an infringement of plaintiff's patent. It is thus fair to hold that defendant's patented improvements embodies the plaintiff's invention without which defendants' form would be worthless" (17a).

7. In holding the patent valid the opinion reads in part:
    "The novelty and essence of Voight's invention was in conceiving that the application of parallel pressure to a substantial portion of the collar would produce the most effectively pressed and shaped collar. It is only after the event

that the very simplicity of this ingenious contrivance makes it seem simple and obvious" (269 F.2d at 263).

8. 35 U.S.C. § 284 reads in pertinent part:
    "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement * * *.
    "When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed."

9. See Copease Mfg. Co. v. American Photocopy Equipment Co., 7 Cir. 1961, 298 F.2d 772; Solex Labs, Inc. v. Graham, S.D. Cal.1958, 165 F.Supp. 428; Davis Co. v. Russell-Harvelle Hosiery Mills, Inc., M.D.N.C.1956, 140 F.Supp. 32; Bristol Labs v. Schenley Labs, S.D.Ind.1953, 117 F.Supp. 67.

copied" appellee's machine and that appellants "willfully trespassed upon plaintiff's patent rights with deliberation and knowledge" (64a). This finding is consistent with the opinion of this court calling attention to appellants' decision "to make a facsimile of the Amco machine 'and take our chances'" (269 F.2d at 268), and our holding that because "joined with improper and deceitful marketing methods the making of the Chinese copies becomes unlawful, in the absence of the taking of reasonable and proper steps by (appellants) to distinguish their machines from the Amcos" (at 276).[10]

█ It is well settled that the award of increased damages is "peculiarly within the sound discretion of the district court" and will not be disturbed in the absence of a showing of an abuse of discretion. E-I-M Company v. Philadelphia Gear Works, 5 Cir. 1955, 223 F.2d 36, 42, cert. denied 350 U.S. 933, 76 S.Ct. 304, 100 L.Ed. 815 (1956); Russell Box Co. v. Grant Paper Box Co., 1 Cir. 1953, 203 F.2d 177, 183, cert. denied 346 U.S. 821, 74 S.Ct. 37, 98 L.Ed. 347 (1953); rehearing denied 346 U.S. 905, 74 S.Ct. 216, 98 L.Ed. 404.

There was no abuse of discretion in the district court awarding, upon recommendation of the special master, an increase in the damages.

Appellee contends that the increase was inadequate and that the damages should have been trebled. The district court well said:

"The difficult question is, of course, to determine what the percentage increase ought to be. In this connection, the Master found that defendants' infringing acts, although deliberate and with knowledge of plaintiff's rights, could not be termed pernicious due to prevailing 'economic pressure in the form of customer dissatisfaction.' This mitigating factor was, apparently, what disposed the Master to recommend only a moderate increase. In the absence of other meaningful factors militating toward either a greater or lesser increase of damages, the court adopts the Master's recommendation" (65a–66a).[11]

The findings of the district court are not clearly erroneous, and there was no abuse of discretion in awarding the increase of 25%.

### III. *Award to Special Master*

█ The special master expended 380 hours in connection with the accounting, including 16 days of hearings, the review of 2,842 pages of testimony and over 300 exhibits, and the consideration of briefs on the applicable law. He requested and was allowed an average hourly rate of $40, for a total fee of $15,000.

Recognizing that the fee sought was large if viewed solely against the damages awarded, the court found the fee

---

10. In reaching this conclusion this court said further:

"Were it possible to view in isolation the production and sale of the (appellants') Chinese copies of the Amco machines, the charge of unprivileged imitation might fall of its own weight, except insofar as there was infringement of a valid patent. But so much of the evidence as discloses (appellants') fraudulent scheme to market its products in such fashion as to poach upon Amco's preserves is actionable, and this evidence, considered together with the copying of every detail of the Amco machines, makes every feature of the whole scheme actionable in its entirety" (269 F.2d at 271).

11. In confirming the award of a 25% increase of the base damages, Judge Sugarman, in his opinion of June 17, 1968, after quoting from the report of the special master and the prior opinion of this court, said in part: "What emerges when all of these statements are taken together is not that defendants did not infringe with deliberation and abandon, clearly they did, but that considering the totality of circumstances, it cannot be said that the scheme in its entirety was executed with the ultimate in willfulness. The facts of this case are not comparable to those of cases cited by plaintiff in which damages were more substantially enlarged" (89a).

reasonable in view of the extent of the accounting, "the difficulty of many of the issues presented, the thoroughness of the master's services, including a 31-page report, and his expertise in the area with which this case is concerned," citing 5 Moore's Federal Practice § 53.-04(1), pp. 2921–22 [12] (86a, 87a).

■ Appellants argue that the fee should be reduced and the greater portion assessed against appellee because the master permitted appellee to present evidence of sales subsequent to the expiration date of the patent without first establishing the continuation of the unfair acts of competition, thereby unnecessarily extending the length of the hearings. In answer to this objection the district court pointed out that the reference to the master was "structured in broad and positive terms," and that the "breadth of the reference provisions coupled with the complexity of this litigation makes it difficult to see that the master disregarded the terms of the reference or abused his discretion by taking proof of items which did not enter into the findings on damages, but which would have so entered had either he or the court held other than as they did on the critical and contested issues" (84a–86a).

We conclude that the district court did not abuse its discretion in the amount of compensation allowed to the master and in assessing the master's fee and other costs of reference against appellants.

## IV. *Allowance of Attorney Fees*

■ 35 U.S.C. § 285 provides that in "exceptional cases" the courts "may award reasonable attorney fees to the prevailing party." Ordinarily, the al-

lowance of attorney fees, like increased damages is within the sound discretion of the trial judge in cases involving a willful, intentional and deliberate patent infringement. This court in its prior opinion recognized the propriety of allowing a reasonable attorney fee in this case (269 F.2d at 277).

■ The special master awarded appellee attorney fees of $10,000. Appellee contends the amount allowed was totally inadequate for the time expended in this protracted litigation. Appellants contend that the amount allowed was "arbitrary" in that there was no proof "as to specific services rendered and testimony as to their reasonableness." [13] Appellants urged a remand for further testimony.

Recognizing that the legal efforts pertaining to this litigation "do not lend themselves to divisions of mathematical certainty" and considering the "countervailing equities of defendants" in defending the claim for damages for unfair competition in the post-infringement period, the district court, after weighing all of the factors, concluded "that $10,000 is a reasonable sum to be awarded to plaintiff as attorney's fees for the legal services rendered in connection with the patent in suit" (70a).

We find no abuse of discretion and approve the award.

## V. *Damages for Unfair Competition*

The district court awarded appellee damages for unfair competition for appellants' sales of machines and die assemblies prior to June 24, 1952, i. e. during the pre-infringement period. Appellants contend that this award, based on appellee's lost profits, is speculative, is not supported by the evidence, and

---

12. The text reads in pertinent part: "The court should consider the time necessarily spent by the master, his ability and distinction, the thoroughness of his services, the amount of money or the importance of the matter involved, and the assistance that he has given to a final disposition of the issues that were referred to him" (at 2921).

13. Although it is the general rule in this circuit that the claim for attorney fees must be supported by "accurate and current records of work done and time spent" (In re Hudson & Manhattan Railroad Company, 2 Cir. 1964, 339 F.2d 114, 115), we conclude that an exception may properly be made in this case, since the award of $10,000 was clearly reasonable compensation for this very protracted litigation.

should be disallowed. In turn, appellee contends that it is entitled to additional awards for damages for the patent infringement and post-infringement period.

a. *Award for Pre-Infringement Period*

█ In an action for unfair competition the aggrieved party may recover profits of the offender, provided they are "derived from unfair competition" or are damages by way of lost profits of the plaintiff if the losses can be "directly attributed to the unfair acts" of the defendant. An accounting is not justified where proof of the profits would be speculative. Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co., 1957, 3 A.D.2d 227, 159 N.Y.S.2d 606.

█ In our prior opinion this court held that appellants had committed acts of unfair competition by reason of their fraudulent marketing of the Chinese copies of appellee's machine and directed an "assessment of damages sustained * * * by reason of the fraudulent practices * * *" (269 F.2d at p. 277). In computing damages for unfair competition the master limited the award to loss of profits from the sale of appellee's "simulated Amco A-type machines," noting that this court had referred to these machines as constituting unfair competition by virtue of their detailed simulation of the Amco machine in conjunction with the fraudulent marketing practices.

Appellants argue that any lost profits from unfair competition are speculative, that it may not be assumed that appellee would have made the sales actually made by appellants, and there is no evidence that any purchaser of appellants' machines was under the impression or misled into believing he was buying one of appellee's machines. This contention was answered in part in our opinion where it was said: "Nor are we, in view of the deliberate plan to poach unjustifiably on

Amco's goodwill, disposed to debate in detail the probabilities of confusion" (269 F.2d at 276). The contention was answered further by the district court as follows:

"From February, 1952, through June, 1952, defendants produced slavish copies of plaintiff's machines and die assemblies, 269 F.2d at 262, and this period marked the inception of their scheme of willful pirating. During this period defendants, as plaintiff's sole competitor, serviced the same general geographical areas as plaintiff and, it appears, made sales to many who were customers of plaintiff. * * *

"On these facts, it is a fair inference that defendants' acts of unfair competition were responsible for the particular sales and that if defendants had not made these sales, plaintiff would have made them together with its usual profits" [14] (63a).

We agree with the master and district court that an award of $3,884.07 for damages for the period January through June, 1952, was proper.

b. *Failure to Award Damages for Unfair Competition During Infringement Period*

█ Appellee argues that even though the claims for patent infringement and unfair competition arise from the same infringing acts of appellants, they are separate and distinct causes of action and justify separate awards. They rely upon paragraphs 4 and 5 of the interlocutory judgment of April 26, 1961, paragraph 4 providing for an accounting for "damages adequate to compensate plaintiff for the infringement" and paragraph 5 providing for "damages sustained and the profits lost by plaintiff on account of the unfair trade practices" by the appellants.

14. The master found that appellee had provided "accounting data which demonstrates with reasonable certainty what its profit would have been on the machines

and die assemblies during the period in which they were sold by (appellants)" (35a).

We agree with the district court that appellee "has proved no damages resulting from defendants' acts of unfair competition during the patent infringement period for which plaintiff has not been compensated by the award of damages for infringement" (58a), and that the additional claim for damages for unfair competition during this period accordingly was properly denied. An award for unfair competition during the patent infringement period would in effect allow a double recovery.

The rule here applicable was well stated in Henry Hanger & Display Fixture Corp. v. Sel-O-Rak Corp., 5 Cir. 1959, 270 F.2d 635, 644:

> "Where a patent is held valid and infringed a claim for damages from unfair competition arising from the infringement may be joined with the cause of action for infringement (citing cases). * * * The two claims, the one for infringement and the other for unfair competition, may differ somewhat in the theory of legal liability. The acts of the defendants which the plaintiff says constituted unfair competition were acts of patent infringement or were so directly related to infringement as to constitute a part of it. * * * We think there was no evidence of any injury sustained by the plaintiff by reason of unfair competition from the defendants for which the plaintiff is not compensated by the court's judgment. The denial of a separate award for unfair competition is not erroneous."

c. *Failure to Award Damages for Unfair Competition During Post-Infringement Period*

■ Appellee seeks an additional award for alleged acts of unfair competition subsequent to the expiration of the patent in 1954. This claim is predicated upon appellant's continued manufacture and sale of the Amco-type assemblies which incorporate the Amco-yoke and the sale of (R) remodeled and (C) converted assemblies.

The master and district court found that appellee had failed to show a continuation of any unfair trade practices subsequent to the expiration of the patent and interpreted the prior decision of this court as permitting appellants to deal in remodeled die assemblies which were considered "parts." The master found further that after the patent had expired the "remodeled" and "converted" die assemblies, as well as new die assemblies sold as parts, were properly identified (31a).

In holding that a complete assembly is a "part" within the meaning of the interlocutory judgment, as modified by this court, the district court said in part:

> "Although not entirely free of ambiguity, the modification in the court's view conveys that complete assemblies are to be considered 'parts.' A combination of factors support this construction. The Court of Appeals, 287 F.2d at 419–20, noted that it intended no departure from the basic principles of the law of unfair competition; that the patent in suit had expired; that defendants then manufactured a machine which functioned as well as plaintiff's but was markedly distinguishable; and that defendants after expiration of the patent would have been entitled to copy plaintiff's patent but for their fraudulent marketing. It thus seems fair to hold that the court did not intend to unreasonably perpetuate plaintiff's monopoly beyond the expiration date of the patent, but only to enjoin defendants from the sale of unidentified A-type assemblies and the use of A-type assemblies in their new machines. A construction of the term 'parts' so as to exclude complete die assemblies would perpetuate plaintiff's monopoly" (61a, 62a).

We agree with the district court's construction of the interlocutory judgment as modified by this court and hold that the proof was insufficient to justify an award for unfair competition in the post-injunction period.

Judgment affirmed.

HAYS, Circuit Judge (dissenting):

I dissent from the portions of the majority opinion affirming the award of damages.

I believe that the damages recovered by the plaintiff are greatly inflated over those to which it is rightfully entitled.

The plaintiff should not have been permitted to recover for lost profits on unpatented tables or frames sold independently of die assemblies. The tables were sold separately and could have been, and, for all that was proved, may have actually been, bought by customers who purchased plaintiff's die assemblies.

The plaintiff should not have been permitted to recover lost profits on complete pressing machines. The profits should have been apportioned between the patented portion of the machines and those parts which were unpatented. Since plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains.

Profits on the ½ collar machines should have been apportioned since most of the distinctive features of these machines were held by this court to be unpatentable in American Safety Table Co., Inc. v. Schreiber, 269 F.2d 255 (2d Cir. 1959).

Profits on defendants' sales of "B" type machines should also have been apportioned between those arising out of the inclusion of some features of plaintiff's patented die assembly and those arising out of aspects of the machines which were entirely unrelated to plaintiff's patent.

The special master and the court were clearly in error in awarding increased damages to the plaintiff. Not only did defendants rely on advice of counsel in proceeding to manufacture the product later found to be infringing, but this court was divided as to the validity of plaintiff's patent. Judge Clark wrote a powerful dissent. American Safety Table Co., Inc. v. Schreiber, *supra.* In the light of the grave doubt as to the patentability of plaintiff's product the award of additional damages is completely unjustified.